

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-12-00041-CR

Robert **INFANTE**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2011CR6301
Honorable Maria Teresa Herr, Judge Presiding

Opinion by:    Catherine Stone, Chief Justice

Sitting:       Catherine Stone, Chief Justice
               Sandee Bryan Marion, Justice
               Rebeca C. Martinez, Justice

Delivered and Filed:  February 6, 2013

AFFIRMED

A jury found Robert Infante guilty of the offense of evading arrest or detention with a vehicle and sentenced him to eight months in prison.  On appeal, Infante presents four points of error: (1) the evidence is legally insufficient; (2) the trial court erred in denying Infante's request for a jury instruction under Article 38.23 of the Code of Criminal Procedure; (3) the trial court's introductory remarks during voir dire amounted to an improper comment on the evidence; and (4) Infante received ineffective assistance of counsel in violation of the Sixth Amendment of the United States Constitution.

## BACKGROUND

Officers Sotelo and Cummins, who were partners riding in the same patrol car, pulled up behind Infante at a red light. When the light turned green, the officers noticed Infante accelerate at an unusually high speed. As a result, the officers sped up to catch up to Infante, at which time they started to "pace" Infante. After pacing him for a short distance, the officers realized Infante was traveling fifty-five miles per hour in a forty-mile-per-hour zone. The officers then activated their overhead lights and sirens in an attempt to stop Infante for the traffic violation, but Infante failed to pull over. The officers testified Infante passed several empty parking lots and side streets where he could have stopped. Eventually Infante stopped, and the officers immediately approached the vehicle and asked Infante to step out. Officer Sotelo noticed that Infante had something in his mouth, and when asked what it was, Infante responded, "It's just weed." The officers ordered Infante to spit the drug out. They then searched his vehicle and found several empty plastic baggies with the odor of marijuana. At the conclusion of the stop, Infante was arrested for evading detention or arrest with a vehicle.

## SUFFICIENCY OF THE EVIDENCE

In his first point of error, Infante claims the evidence is legally insufficient and, as such, the trial court erred in denying his motion for a directed verdict. In determining whether the evidence is legally sufficient to support a conviction, we apply the standard articulated in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality opinion); *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988) (en banc). This standard requires us to determine whether, considering the evidence in the light most favorable to the verdict, a fact finder could rationally find each element of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011), *cert. denied*, 132 S. Ct. 1763 (2012). We measure the sufficiency of the

evidence by looking at the substantive elements of the crime as defined by the hypothetically correct jury charge. *Adames*, 353 S.W.3d at 860.

We defer to the fact finder's credibility assessments and the weight given to the witnesses' testimony. *Brooks*, 323 S.W.3d at 899. "We will uphold the verdict unless a reasonable [fact finder] must have had a reasonable doubt as to at least one of the elements of the offense." *Runningwolf v. State*, 360 S.W.3d 490, 494 (Tex. Crim. App. 2012). "Direct and circumstantial evidence are treated equally: 'Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt.'" *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (quoting *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007)). This is because we must observe the cumulative impact of the evidence, instead of simply considering each piece of evidence in isolation. *Id.*; *Evans v. State*, 202 S.W.3d 158, 166 (Tex. Crim. App. 2006).

Section 38.04 of the Texas Penal Code defines the offense of evading arrest or detention and provides the elements of the offense as they would appear in a hypothetically correct jury charge. TEX. PENAL CODE ANN. § 38.04 (West Supp. 2012). "A person commits an offense if he intentionally flees from a person he knows is a peace officer or federal special investigator attempting to lawfully arrest or detain him." *Id.* § 38.04(a). The offense is a state jail felony if a vehicle is used during the evasion. *Id.* § 38.04(b)(1)(B). Thus, the prosecution must prove that "a person (1) intentionally (2) flees (3) from a person (4) he knows is a peace officer [or federal special investigator] (5) attempting to lawfully arrest or detain him[,] and (6) the actor uses a vehicle while in flight." *Calton v. State*, 176 S.W.3d 231, 234 (Tex. Crim. App. 2005) (en banc).

Infante does not challenge the legal sufficiency of every element of the offense; instead, he challenges only the fifth element—the lawfulness of the detention. Specifically, Infante asserts the evidence is legally insufficient for a reasonable fact finder to determine Infante was

speeding at the time the officers attempted to stop him. Under Section 545.351 of the Transportation Code, "[a]n operator may not drive at a speed greater than is reasonable and prudent under the circumstances then existing." TEX. TRANSP. CODE ANN. § 545.351(a) (West 2011). A speed in excess of the prescribed speed limit is prima facie evidence of a traffic violation. *Id.* § 545.352 (a). To justify a stop for speeding, the officer must provide specific and articulable facts that, taken together with rational inferences therefrom, warrant a reasonable suspicion that the individual was speeding. *Castro v. State*, 227 S.W.3d 737, 742 (Tex. Crim. App. 2007); *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005).

Officer Cummins testified that Infante drove eight-tenths of a mile after the patrol car lights were activated before he stopped, and that he believed the distance between the light and the intersection where the officers determined Infante was speeding was about 300 to 400 feet. During cross-examination, Officer Cummins answered in the affirmative to defense counsel's question that the pacing took "about four-and-a-half seconds," and he estimated that forty-five seconds to a minute elapsed between the initiation of the stop and the time that Infante stopped. Officer Sotelo testified Infante drove eight-tenths of a mile between the time the light changed and the time Infante stopped, and he estimated that the officers paced Infante for about 150 yards (or 450 feet). In addition, Officer Sotelo also stated that a few minutes elapsed between the time the officers began pursuit and the time Infante stopped. When told that another witness said the pursuit lasted only about forty-five seconds, Officer Sotelo agreed that "[t]he actual time on the road could have been close to a minute."

Infante argues the officers' testimony is insufficient to establish that the officers properly paced Infante's vehicle and, consequently, is insufficient to objectively establish reasonable suspicion that Infante was speeding. In support of this argument, Infante relies primarily on formulations that he contends make it impossible for him to have been going fifty-five miles per

hour if the officers' estimated lengths of pacing are used. Infante provides no case law to support his assertion that we should even consider such formulas, or further yet, use an officer's estimates as determinative evidence of whether reasonable suspicion existed.

We, however, have found an unpublished case from the El Paso Court of Appeals that dealt with a very similar argument about an officer's approximations proving impossible, and the argument was rejected.

> . . . Appellant argues that Officer Garcia's testimony that Appellant was speeding was incredible, in that the officer's location, the alleged speed of the vehicles, and the location of the stop are inconsistent with the officer's recitation of the distances and speeds involved. Appellant reasons that the figures given by Officer Garcia indicate that he would have stopped Appellant well beyond where he was stopped; therefore, Appellant was traveling within the speed limit. However, Appellant presumes an exactness in the testimony that was not evident at trial. Officer Garcia testified in approximations . . . . The court could well have disregarded the officer's testimony that was inconsistent with the location of the stop. This was a matter for the trial court to resolve.

*White v. State*, No. 08-06-00049-CR, 2007 WL 853133, at *3 (Tex. App.—El Paso Mar. 22, 2007, no pet.) (not designated for publication). We agree with the El Paso Court of Appeals.

Both officers testified they were waiting behind Infante at a red light and Infante accelerated at an unusually high speed when the light turned green. The officers stated they had to speed up to catch Infante, and thereafter, they began pacing him at fifty-five miles per hour in a forty-mile-per-hour zone. The officers described the process employed when they pace a vehicle and stated that they learned how to properly pace a vehicle while at the police academy, which bolsters the reasonableness of their suspicion. *See Ford*, 158 S.W.3d at 494 (explaining that law enforcement training and experience are factors that can be considered in a reasonable-suspicion analysis). In addition, the prosecution presented overhead images of the relevant section of Tezel Road that showed the road's surroundings, including numerous buildings, parking lots, and stretches of undeveloped land between each intersection. At trial, the

officers pointed out the sequence of events along the map images and used various intersections as points of reference. From these images of the area, the jury could have believed that the distances pointed out by the officers were sufficient for the officers to determine Infante was speeding.

The formulas urged by Infante were not presented in the trial court, and the jury was not required, or even likely, to know about or apply them. The jury is the sole judge of the weight and credibility of the evidence, and if it did not believe the officers' testimony that Infante was speeding or the approximations provided, the jury was free to discredit it. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000) (en banc). The verdict reflects that the jury believed the officers' testimony and understood that the numbers provided were merely estimates. On this record, we cannot say that the evidence is insufficient to support the jury's finding of a lawful detention beyond a reasonable doubt or that the trial court erred in denying Infante's motion for a directed verdict.

## ARTICLE 38.23 JURY INSTRUCTION

In his second point of error, Infante alleges the trial court erred in denying his request for a jury instruction under Article 38.23 of the Code of Criminal Procedure. Article 38.23 prevents illegally obtained evidence from being used at trial. TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (2005). When evidence is presented at trial that raises an issue of whether it was legally obtained, "the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of the Article, then and in such event, the jury shall disregard any such evidence obtained." *Id.* In other words, to get an Article 38.23 instruction the evidence presented at trial must raise a disputed issue of fact. *Madden v. State*, 242 S.W.3d 504, 509–10 (Tex. Crim. App. 2007). The defendant must show three things in order to receive an Article 38.23 jury instruction:

(1) The evidence heard by the jury must raise an issue of fact;

(2) The evidence on that fact must be affirmatively contested;

(3) That contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence.

*Id.* at 510 (footnote omitted).

Infante argues that the jury should have been provided an Article 38.23 instruction because the fact of whether or not he was speeding and the accuracy of the pacing technique used were contested during cross-examination of Officers Cummins and Sotelo. However, affirmative evidence of a disputed factual issue will not arise from counsel's questions on cross-examination. *Id.* at 513. Nevertheless, a witness's answers might put a fact in question. *Id.* Recognizing that it must be the witness's answers that put a fact in dispute, Infante points to the differences in the answers of Officers Cummins and Sotelo on: (1) the estimated distance traveled before the officers were able to establish Infante's speed using pacing techniques (300 to 400 feet versus 450 feet); and (2) the differences in the estimated time that elapsed between the time the stop was initiated and the time Infante came to a stop (forty-five seconds to a minute versus a few minutes, then corrected to be closer to a minute).

The officers' answers were estimations, not affirmative statements, and these estimates were not so disparate that they created a dispute in the evidence. *Cf. id.* (explaining that if one witness testifies to a fact and another witness is asked about that fact and responds that he doesn't know about it, there is no affirmatively disputed issue of fact). Despite extensive cross-examination, the officers never wavered on the accuracy of the pacing technique employed, their belief that Infante was speeding, or the unusually far distance Infante drove before pulling over. We conclude the trial court properly denied Infante's request for a jury instruction under Article 38.23.

### COMMENTS DURING VOIR DIRE

In his third point of error, Infante argues the trial court's opening remarks during voir dire improperly commented on the weight of the evidence. Specifically, Infante points to the following explanation of reasonable doubt provided by the trial court:

> Now, having said that beyond a reasonable doubt is the heaviest burden in [jurisprudence], one caveat is it's not the same thing as beyond all possible doubt. It's not proof like in Perry Mason, beyond the shadow of a doubt. I don't know if anyone even remembers that anymore. I do. But it's not beyond a shadow of a doubt and it's not beyond all possible doubt. And why is that? And the reason is that for someone to know something to that certainty, beyond all doubt, beyond the shadow of a doubt—I know everything that happened—well, they would have had to have been there, they would have had to have seen it, they would have had 20/20 vision, they would have had a good seat, they would have seen it from beginning to the end, okay. Then you would know because you saw it with your own eyes, and you really did see it, and there was nothing impeding your ability to see, hear, or understand what was going on. If you are that person, will you be on the jury? Where will you be? Anybody know where that person will be? They'll be on the witness stand. They'll be like the star witness, you know, because they saw the whole thing and they'll be able to describe and tell the jury what happened, all right.

Infante contends these comments violated Article 38.05 of the Texas Code of Criminal Procedure, which prohibits the trial judge, prior to the return of the verdict, from making any remark designed to convey the judge's opinion of the case to the jury. TEX. CODE CRIM. PROC. ANN. art. 38.05 (West 1979). Infante argues the court's explanation "facilitated" the State's burden of proof and constituted an improper comment on the strength of the State's case because at trial the only witnesses called by the State were the two arresting officers, who were in fact eyewitnesses, and thus "star witnesses" under the judge's comments. Infante, however, did not object to these remarks at the time they were made. Generally, a party must object when the statement is made in order to preserve the issue for appeal. TEX. R. APP. P. 33.1. Nevertheless, an improper comment could be so egregious that it would constitute fundamental error, which cannot be waived by a failure to object. *Blue v. State*, 41 S.W.3d 129, 132–33 (Tex. Crim. App.

2000) (en banc) (plurality opinion); *see also* TEX. R. EVID. 103(d); *Powell v. State*, 252 S.W.3d 742, 744 (Tex. App.—Houston [14th Dist.] 2008, no pet.). "Egregious harm is such harm that a defendant has not had a fair and impartial trial." *Powell*, 252 S.W.3d at 744.

Although we agree that the trial court's remark, when viewed in isolation, goes farther than necessary to convey that a juror will never be 100% sure of the verdict and could be understood to imply that an eyewitness's testimony is dispositive, we cannot conclude that the comment deprived Infante of a fair trial. In the unpublished opinion of *Runnels v. State*, No. AP-75318, 2007 WL 2655682, at *6 (Tex. Crim. App. Sept. 12, 2007) (not designated for publication), the Court of Criminal Appeals rejected a complaint regarding a reasonable doubt explanation similar to the one in this case. In doing so, the court noted the importance of viewing the surrounding statements of the trial judge and viewing the comment in context. *Id.*; *see also Guidry v. State*, 9 S.W.3d 133, 139–40 (Tex. Crim. App. 1999) (considering the trial judge's statements surrounding the allegedly improper comment).

When we view the remarks surrounding the one complained of and the voir dire as a whole, we cannot say the comment impinged upon Infante's basic rights to an impartial judge or the presumption of innocence. Immediately preceding the complained of comment, the trial judge explained the other burdens of proof used in civil law matters, including termination of parental rights cases, and then stressed that beyond a reasonable doubt "is the heaviest burden in [jurisprudence] . . . [b]ecause no matter how important those issues [in civil cases], when you come over here, we are talking about a person's liberty." After the complained of explanation, the trial court again remarked that beyond a reasonable doubt was the "heaviest burden in [jurisprudence]." Additionally, after discussing that a defendant's choice not to testify and the fact that an indictment was returned cannot be used against him, the trial court stated, "And the reason I want to stress that is because any person who asks for a trial is presumed innocent until

proven guilty. Presumption is for innocence." Thereafter, the trial judge further discussed the presumption of innocence and its sanctity in criminal trials. Additionally, during voir dire the attorneys for the State and the defense discussed at length credibility issues of witnesses, the presumption of innocence, and the meaning of beyond a reasonable doubt. Having reviewed the voir dire as a whole, the context of the trial court's remarks, and the record in its entirety, we cannot conclude the trial court's comment deprived Infante of a fair trial.

### INEFFECTIVE ASSISTANCE OF COUNSEL

In his fourth point of error, Infante argues he received ineffective assistance of counsel in violation of the Sixth Amendment of the United States Constitution. To determine whether a defendant received ineffective assistance of counsel, we use the two-prong standard set out in *Strickland v. Washington*: (1) trial counsel's performance must have been deficient; and (2) that deficient performance must have prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Perez v. State*, 310 S.W.3d 890, 892–93 (Tex. Crim. App. 2010).

To show that counsel's performance was deficient, a defendant must show by a preponderance of the evidence that under the circumstances counsel's performance fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. This is an objective standard of reasonableness from the perspective of counsel at the time of the complained of action or inaction. *Id.* at 689. Furthermore, we indulge a strong presumption that counsel performed properly under "the wide range of reasonable professional assistance." *Id.*; *Perez*, 310 S.W.3d at 893.

Additionally, the ineffective assistance claimed must be "firmly founded in the record." *Thompson v. State,* 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). It is ordinarily very difficult to demonstrate ineffective assistance of counsel on direct appeal because the record does not usually contain counsel's reasons for his actions or inactions. *Menefield v. State*, 363 S.W.3d

591, 594 (Tex. Crim. App. 2012). Although a reviewing court can find deficient performance absent counsel's reasoning in cases where "the challenged conduct was 'so outrageous that no competent attorney would have engaged in it,'" counsel should ordinarily be given an opportunity to explain himself before being condemned as ineffective. *Id.* (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

In support of his claim of ineffective assistance of counsel, Infante complains that trial counsel failed to: (1) file a motion to suppress the testimony and evidence as to the officer's pacing procedures and the resulting detention; (2) object to the trial court's comments concerning star witnesses and reasonable doubt during voir dire; (3) object to alleged hearsay testimony and speculation by Officer Cummins and Officer Sotelo regarding Infante's marijuana possession and possible reason for evading detention; and (4) lay out in stronger detail the physical impossibility of the officer's purported pacing procedures.

Infante's first, third, and fourth complaints fail because the record does not contain trial counsel's reasoning or strategy, and this is not one of the rare cases where counsel's "conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Menefield*, 363 S.W.3d at 594 (quoting *Garcia*, 57 S.W.3d at 440). When faced with a record devoid of counsel's reasoning or obvious deficiencies, we must presume counsel followed an appropriate trial strategy. *Strickland*, 466 U.S. at 689. Accordingly, we cannot conclude Infante was denied his Sixth Amendment right to reasonably effective assistance of counsel. *Strickland*, 466 U.S. at 687.

With regard to Infante's first complaint, there is no evidence that counsel knew of the officers' estimated times and distances of the pacing prior to trial to enable him to file a pretrial motion to suppress. Additionally, with regard to Infante's fourth complaint, use of the formulas urged by Infante on appeal to show the "incredible" nature of the officers' testimony was only

one possible method of discrediting the officers' testimony. We cannot fault trial counsel for using an alternate strategy—cross-examination and closing argument—to highlight the alleged impossibility of the officers' statements. *See Strickland*, 466 U.S. at 689–90. Moreover, with respect to Infante's third complaint, trial counsel may have refrained from objecting to prevent calling attention to the matter. Trial counsel may also have believed the testimony was not speculative since the jury could have drawn the same inference.

Infante's second complaint fails as well. If trial counsel had lodged an objection to the trial judge's comment, in order to have his case reversed, Infante would still be required to show that the comment was reasonably calculated to benefit the State or to prejudice his rights to a fair trial. *Sharpe v. State*, 648 S.W.2d 705, 706 (Tex. Crim. App. 1983); *Aschbacher v. State*, 61 S.W.3d 532, 539 (Tex. App.—San Antonio 2001, pet. ref'd). After placing the trial judge's comment in context and considering everything the jury heard during voir dire, we cannot conclude the comment was calculated to benefit the State or to prejudice Infante's rights.

## CONCLUSION

We hold that the evidence was legally sufficient, the trial court's comment during voir dire did not deprive Infante of a fair trial, and the trial court properly denied the requested Article 38.23 jury instruction. Based on the record before us, we conclude that trial counsel was not ineffective. Accordingly, we overrule Infante's points of error and affirm the judgment of the trial court.

Catherine Stone, Chief Justice

PUBLISH

- 12 -