

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00115-CR

Lloyd **RECTOR**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 227th Judicial District Court, Bexar County, Texas
Trial Court No. 2012-CR-4029B
Honorable George H. Godwin, Judge Presiding[1]

Opinion by:     Rebeca C. Martinez, Justice

Sitting:        Rebeca C. Martinez, Justice
                Patricia O. Alvarez, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed:  April 15, 2015

AFFIRMED

Lloyd Rector appeals his conviction for aggravated robbery with a deadly weapon, arguing

the trial court abused its discretion by defining "beyond a reasonable doubt" during voir dire and

by denying him access to evidence with potential exculpatory and impeachment value.  We

overrule Rector's issues on appeal and affirm the trial court's judgment.

---

[1] Sitting by assignment.

**BACKGROUND**

At approximately 5:00 a.m. on February 16, 2014, Jennifer Delgado and her friend Alex were asleep on her living room couch when they heard loud banging on the front door and two men entered the home. The darker-skinned man pointed a gun at them and instructed them to lie down on the floor and be quiet. Both men were wearing hoodies and had pulled them down to obscure their faces; the darker-skinned man was also wearing a red bandana across his mouth. When Jennifer screamed, the lighter-skinned man grabbed the gun from the first man and fired a shot in her direction, instructing her to be quiet. The darker-skinned man demanded, "Give me everything you've got" and started walking around the house collecting items in a plastic garbage bag. Meanwhile, the lighter-skinned man took Jennifer into the kitchen at gunpoint and instructed her to undress and perform a sexual act, which Jennifer refused to do. During this time the man's hoodie fell away from his face and Jennifer recognized him as Oscar Aguilera, with whom she had attended middle school. At that point, the darker-skinned man told Aguilera they "didn't come for that," and the men then left with the trash bag, threatening to come back and kill Jennifer if she told anyone about the robbery. Two other friends who had been sleeping in a back bedroom escaped out of a window when they heard the commotion, ran down the street to a neighbor's house, and called 911.

At approximately 4:45 a.m. that same day, San Antonio Police Officer Deidra Dawson was down the street from Jennifer's house investigating a "suspicious person" call about a young man in a black t-shirt running down the street ringing doorbells. Dawson saw Rector running down the sidewalk carrying a plastic trash bag and looking "very stressed out." Dawson stopped Rector and asked for his identification, talking to him for about three to four minutes. Rector stated that he was on his way home from a friend's house and that the bag was full of clothes. Because Rector had no outstanding warrants and she did not observe him committing a crime, Dawson released

Rector without looking inside the bag; she stated she had no probable cause to search the bag. About thirty seconds later, Dawson received a call for the robbery at Jennifer's house about one block away. Dawson went to the robbery scene and interviewed the witnesses. She broadcast a description of the suspects, based on her earlier encounter with Rector, but no one was apprehended that night. Dawson listed Rector as a suspect in her report.

Several days later, Jennifer decided to make a statement and identified Aguilera as one of the men who robbed her. Aguilera was arrested but denied involvement in the robbery and denied knowing Rector. About two weeks later, Rector was arrested on outstanding traffic citations and was questioned about the robbery. Rector admitted going to Jennifer's house to buy drugs, but stated he left before the robbery occurred. Rector also admitted knowing Aguilera and stated that Aguilera had told him about the robbery.

Rector was indicted for aggravated robbery involving the use or exhibition of a deadly weapon, to wit: a firearm. *See* TEX. PENAL CODE ANN. § 29.03 (West 2011). A jury found Rector guilty as charged in the indictment, and the trial court sentenced him to twenty years' imprisonment. Rector now appeals.

## ANALYSIS

### *Definition of "Beyond a Reasonable Doubt" – Voir Dire*

In his first and second issues, Rector asserts the trial court abused its discretion by providing the jury panel with a definition of "beyond a reasonable doubt" during voir dire and by sustaining the State's objection to defense counsel's attempt to "correct" the definition. The State replies that the trial court's definition did not constitute error and that Rector failed to preserve his second complaint.

In discussing the State's burden to prove every element of the charged offense beyond a reasonable doubt during his general remarks to the venire panel, the trial court stated,

Let's talk about beyond a reasonable doubt. I'm going to offer up a definition in a minute. I stole it from another prosecutor 30 years ago. And the reason I did that is because he had a way to define it that I couldn't say it in [sic] better than that. You're going to get a definition in the Court's Charge. The definition goes something along the lines of, 'It's not beyond all doubt but beyond a reasonable doubt.' I'm not sure how helpful that is.

My definition that I borrowed is if you go back there in the jury room and you think the Defendant is probably guilty, that's not proof beyond a reasonable doubt. If you go back there in the jury room and *you're convinced in your heart and in your mind*, that is proof beyond a reasonable doubt.

All right. That's the burden. It's not beyond all doubt. It's not beyond a shadow of a doubt.

(emphasis added).

Defense counsel objected that the court's comments were not a proper statement of the law. The court overruled the objection and continued explaining the meaning of "beyond a reasonable doubt" by comparing the different burdens of proof, from "preponderance of the evidence" to "clear and convincing" to "beyond a reasonable doubt," which the court stressed was the highest burden. The court finished by repeating that beyond a reasonable doubt is "not proof beyond all doubt. It is proof that convinces you beyond a reasonable doubt, which says it for itself."

(1) The Trial Court's Definition of "Beyond a Reasonable Doubt"

In his first issue on appeal, Rector argues that the italicized portion of the definition was error because it lowered the State's burden of proof by suggesting the jury could convict if they were merely "convinced in [their] heart and [their] mind" rather than convinced by legally sufficient evidence. All of the cases relied on by Rector involve definitions of "reasonable doubt" that were included in jury instructions contained in the court's charge. The function of the court's charge is very different from that of the court's general voir dire, as the jury charge instructs the jury on the law applicable to the case which the jury is obligated to follow. *See Dinkins v. State*,

894 S.W.2d 330, 338 (Tex. Crim. App. 1995). Rector cites no case involving allegedly improper comments by the trial court or counsel during voir dire, nor any case holding that comments on the meaning of reasonable doubt during voir dire constitute error. The State also fails to cite any case addressing allegedly improper comments made by the court or counsel during voir dire, and relies solely on jury charge cases.

Rector's complaint is that the trial court defined "reasonable doubt" as merely what is in each juror's "heart and mind," thereby reducing the State's burden of proof and constituting harmful error. In evaluating a complaint about the trial court's remarks during voir dire, we must examine the remark within the entire context of the record. *Infante v. State*, 397 S.W.3d 731, 738 (Tex. App.—San Antonio 2013, no pet.). Here, as noted above, the trial court suggested a definition of "beyond a reasonable doubt" as being convinced in one's "heart and mind," but did so within the context of its discussion of the various levels of proof in civil and criminal cases. The court repeatedly stressed that beyond a reasonable doubt is "the highest burden" in our judicial system. Finally, the court explained that it is "not proof beyond all doubt," but "[i]t is proof that convinces you beyond a reasonable doubt, which says it for itself."

We disagree that the court's comments about the meaning of "beyond a reasonable doubt," when read in context, were error. In Texas, jurors must decide what "proof beyond a reasonable doubt" means to them. *Murphy v. State*, 112 S.W.3d 592, 597 (Tex. Crim. App. 2003). While it is no longer required that trial courts define "reasonable doubt" for the jury, it is also not prohibited. *Paulson v. State*, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000) (overruling that portion of *Geesa v. State*, 820 S.W.2d 154, 162 (Tex. Crim. App. 1991), which required trial courts to include a particular instruction in the jury charge defining "beyond a reasonable doubt"). While expressing its opinion that the better practice is to give no definition of "reasonable doubt" to the jury, the *Paulson* court acknowledged that, "the Constitution neither prohibits trial courts from defining

reasonable doubt nor requires them to do so as a matter of course." *Id.* (quoting *Victor v. Nebraska*, 511 U.S. 1, 5 (1994)). Here, the trial court's voir dire comments about the meaning of "reasonable doubt" did not convey the court's opinion about whether Rector was guilty, did not apply the burden of proof to the facts of the case, and did not shift or lower the State's burden of proof. *See Latson v. State*, 440 S.W.3d 119, 121 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (holding that court's statement during voir dire that beyond a reasonable doubt is proof that "proves to you individually kind of in your heart, in your mind that the Defendant is guilty" did not taint the presumption of innocence); *see also Wilkerson v. State*, 347 S.W.3d 720, 725-26 (Tex. App.— Houston [14th Dist.] 2011, pet. ref'd) (rejecting defendant's argument that court's explanation to venire panel that proof beyond a reasonable doubt is "what's in your mind to be a reasonable doubt" diminished the State's burden of proof). Most importantly, the trial court's remarks during voir dire did not direct the jurors to follow their "hearts and minds" and ignore the court's written instructions in the jury charge. *See Latson*, 440 S.W.3d at 121. The court's charge did not contain the challenged language about "hearts and minds." The charge simply instructed the jury that the State had the burden to prove every element of the offense beyond a reasonable doubt and that "[i]t is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all 'reasonable doubt' concerning the defendant's guilt." We therefore conclude the court's voir dire comments about the meaning of "beyond a reasonable doubt" were not error, and even if they were error, Rector has not shown that they affected a substantial right. *See* TEX. R. APP. P. 44.2(b).

(2) Restriction on Defense Counsel's Discussion of "Beyond a Reasonable Doubt"

Rector also argues that the trial court deprived him of the opportunity to "correct" the court's definition of "beyond a reasonable doubt" during his voir dire of the jury panel. However, the record reflects that Rector's counsel was permitted to discuss and contrast the various burdens

of proof, to give examples of their application, and to stress that "beyond a reasonable doubt" is the highest burden. Defense counsel further explained that a definition of "beyond a reasonable doubt" is no longer given because "the Supreme Court has decided that it's up to each person individually. I can discuss it with you. I can give you some ideas, but I can't actually come out and give you like a litmus test . . . ." Finally, counsel specifically addressed the language used by the trial court by telling the venire, "So, that's why when somebody says you got to be convinced in your heart, in your mind, you see, that's not beyond a reasonable doubt . . . it's got to go beyond that. Just because you feel it powerful, just because it's something that might inform a lot of your life, doesn't make it true." At that point, the State objected that counsel was misstating the law on reasonable doubt. The court instructed defense counsel to rephrase and he did so by stating, "You got to look at the evidence and make sure it's all there on each element." Defense counsel then moved on to another subject. Because defense counsel did not object to having to rephrase his statements, the error, if any, was not preserved. TEX. R. APP. P. 33.1.

### *Access to Exculpatory and Impeachment Evidence*

In his third and fourth issues, Rector complains that the trial court abused its discretion by improperly denying him access to: (1) potentially exculpatory evidence consisting of the 911 call and dispatch and the communication logs from the mobile data terminal ("MDT") in Officer Dawson's vehicle at the time she detained Rector; and (2) potential impeachment evidence consisting of the internal affairs records of the investigating police officers, and the police interview with Aguilera in which he denies any involvement with Rector. The State replies that Rector has failed to meet his burden to show a due process violation under *Brady v. Maryland*, 373 U.S. 83 (1963).

In April 2013, Rector served a subpoena duces tecum on the San Antonio Police Department (SAPD) seeking "[a]ny communications involving officers or investigators or

audio/video recordings in this case; including but not limited to Mobile Data Terminal logs, conversations between Officers and Dispatchers, 911 telephone calls." The subpoena also sought the disciplinary history, including internal affairs reports, for the officers involved in the case and "witness statements" discoverable by the defense.[2] The City of San Antonio, on behalf of the SAPD, filed a motion to quash and for an *in camera* inspection. The court held a pre-trial hearing on the matter in October 2013. The trial judge stated on the record that he had reviewed the confidential internal affairs packets produced by the SAPD for the officers involved in Rector's case. The court stated it found no exculpatory evidence or evidence relevant to impeachment in the internal affairs records; it sealed the records and made them part of the record. When defense counsel asked about the 911 call/dispatch and the MDT communication logs, the court stated they were not included in the items produced by the SAPD and suggested that Rector urge a subsequent motion seeking their production; counsel stated he would do so. No further motion or subpoena pertaining to the 911 call/dispatch and MDT logs was filed by Rector.

During pretrial proceedings before jury selection commenced on December 4, 2013, Rector's counsel stated,

> So, we've asked for MDT logs and also 911 dispatch recordings so that we can establish that timeline. We believe that's *Brady* material because it is reasonably likely to be exculpatory . . . The MDT logs from the police vehicle during my client's first stop when he was in custody and also any recordings or notations from dispatch at that same time because the officers would have called them and run his license . . . So, that would establish the precise timing of when he was stopped and if the prosecution can establish a precise time that the offense occurred, it might present him with an alibi.

In response to the court's inquiry as to whether any such communication logs still existed, the prosecutor replied that an incident detail report was in the State's open file, but "[o]ther than that,

---

[2] Rector also filed a *Brady* motion and a general discovery motion; however, he did not obtain a ruling on those motions. *See Johnson v. State*, 172 S.W.3d 6, 18 (Tex. App.—Austin 2005, pet. ref'd).

no, Your Honor." The prosecutor further stated that the 911 tapes "are destroyed within a certain amount of time." Defense counsel argued that the MDT and dispatch logs must still exist, but the court ultimately denied Rector's request for their production.

During her trial testimony, Officer Dawson stated that she stopped Rector at 4:45 a.m., detained him for approximately three to four minutes, and then released him; the robbery call came in thirty seconds later. When defense counsel stated that Dawson's report indicates she released Rector at 4:50 a.m., Dawson agreed and explained the officers use approximations for time. Finally, when asked whether she "call[ed] in to dispatch or enter[ed] anything in [her] computer when [she] first come [sic] into contact with the subject," Dawson responded that she did. Dawson stated that she would normally do the same when releasing a subject, but there was not time to do that because the robbery call came in so quickly. Rector did not ask whether Dawson knew if those logs still existed or renew his request for their production.

To prevail on his claim of a due process violation under *Brady*, Rector has the burden to prove that (i) the State failed to disclose evidence in its possession, (ii) the evidence is favorable to the defense, and (iii) the evidence is material in that there is a reasonable probability that, had the evidence been disclosed, the outcome of the trial would have been different. *Pena v. State*, 353 S.W.3d 797, 809 (Tex. Crim. App. 2011); *see Brady*, 373 U.S. at 87. "Favorable evidence includes exculpatory evidence as well as impeachment evidence." *Pena*, 353 S.W.3d at 811. "Exculpatory evidence is that which may justify, excuse, or clear the defendant from alleged guilt, and impeachment evidence is that which disputes, disparages, denies, or contradicts other evidence. *Id.* at 811-12. Evidence is "material" to guilt or punishment if "in light of all the evidence, it is reasonably probable that the outcome of the trial would have been different had the prosecutor made a timely disclosure." *Id.* at 812. However, "[t]he mere possibility that an item

of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *Id.*

Rector has failed to meet each of the three elements necessary to establish a *Brady* violation. With respect to the 911 call/dispatch and the MDT logs, Rector has failed to prove they existed at the time the subpoena was served. *See id.* at 810 ("*Brady* and its progeny do not require prosecuting authorities to disclose exculpatory information to defendants that the State does not have in its possession and that is not known to exist.") (quoting *Hafdahl v. State*, 805 S.W.2d 396, 399 n.3 (Tex. Crim. App. 1990)). As noted, the prosecutor represented that the 911 tapes are routinely destroyed. Rector failed to inquire of Dawson and the other testifying officer whether the 911 dispatch and MDT logs still existed and how long such communication logs are maintained by the SAPD.

Rector has similarly failed to prove that any of the evidence sought was "favorable" to his defense or "material" to his guilt/innocence or punishment. As Officer Dawson testified, she initially responded to a suspicious person call at 4:45 a.m. based on a complaint that a young man was running down the street ringing doorbells. Other trial evidence established this person was one of Jennifer's friends who escaped through a window during the robbery. As the State points out, at the time Dawson made contact with Rector one block away from Jennifer's house, she was already responding to the suspicious person call prompted by the friends' escape during the robbery and efforts to call 911. Dawson testified the dispatch for the robbery came in thirty seconds after she released Rector at approximately 4:50 a.m. Rector has failed to show that the police dispatch and communication logs, even if they existed, would have provided him with an alibi based on the timeline of events, or been otherwise favorable to his defense, or were material in that there is a reasonable probability the trial's outcome would have been different if the evidence was produced. Finally, we find no abuse of discretion in the trial court's ruling that the

SAPD internal affairs records have no exculpatory or impeachment value with respect to Rector's case. *See McBride v. State*, 838 S.W.2d 248, 250 (Tex. Crim. App. 1992).

Last, Rector complains that, "according to now-available materials, the State is in possession of a recorded interview with Oscar Aguilera wherein he denies any knowledge of or involvement with Lloyd Rector" and asserts its disclosure would have led to a different outcome. Rector does not explain the nature of the "now-available materials" and there is nothing in the record before us to support his assertion that the State has, or had at the time of trial, the recorded interview with Aguilera. In addition, evenly broadly construing Rector's subpoena as seeking any recorded statement by Aguilera, he never made this matter known to the trial court. *See* TEX. R. APP. P. 33.1. Further, one of the investigating officers testified to substantially the same evidence by stating that when questioned, Aguilera denied knowing Rector. Rector has not shown any error or harm with respect to a statement by Aguilera.

## CONCLUSION

Based on the foregoing reasons, we overrule Rector's issues on appeal and affirm the trial court's judgment.

Rebeca C. Martinez, Justice

Do Not Publish