

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-15-00471-CR

Donte Lewayne **WILSON**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 290th Judicial District Court, Bexar County, Texas
Trial Court No. 2014CR4061
Honorable Melisa Skinner, Judge Presiding

Opinion by:     Sandee Bryan Marion, Chief Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Patricia O. Alvarez, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed:  August 3, 2016

AFFIRMED

A jury convicted appellant, Donte Lewayne Wilson, of felon in possession of a weapon and deadly conduct, and the trial court assessed punishment at thirty-five years' confinement and forty years' confinement, respectively. On appeal, appellant raises two issues: (1) the trial court erred in denying defense counsel's challenges for cause against three prospective jurors and (2) there is no evidence to support the jury's implied finding that appellant "failed to make adequate inspection and inquiry regarding the presence of others" before he discharged a firearm into the complainant's house. We affirm.

## CHALLENGES FOR CAUSE

On appeal, appellant's brief focuses primarily on whether his complaint regarding the trial court's denial of his for-cause challenges was preserved.[1] Although it is difficult to discern from appellant's brief whether he complains the trial court erred in denying his challenges to eight venire members or to only three venire members, it appears his argument is only to three venire members.[2] Therefore, we address his complaint on appeal only to those three.

### A. Standard of Review

The issue is whether the trial court's rulings on appellant's challenges for cause harmed appellant by effectively depriving him of one of his statutorily allotted peremptory challenges. *Gonzales v. State*, 353 S.W.3d 826, 831 (Tex. Crim. App. 2011). Harm from the erroneous denial of a defense challenge for cause focuses on whether a peremptory challenge "was wrongfully taken from" the defendant. *Id.* Appellant must demonstrate the trial court erred in denying his challenges for cause in order to demonstrate that he was harmed. *Id.*

We look at the entire record of voir dire to determine if the evidence is sufficient to support the court's ruling on a challenge for cause. *Feldman v. State*, 71 S.W.3d 738, 744 (Tex. Crim. App. 2002). We afford great deference to the trial court's decision because the trial judge is present to observe the demeanor of the venire member and to listen to his or her tone of voice. *Id.* Particular deference is due when the venire member's answers are "vacillating, unclear, or contradictory." *Davis v. State*, 313 S.W.3d 317, 344 (Tex. Crim. App. 2010); *Moore v. State*, 999 S.W.2d 385, 400 (Tex. Crim. App. 1999). Consequently, we will reverse a trial court's ruling on a challenge for cause only if a clear abuse of discretion is evident. *Davis*, 313 S.W.3d at 344.

---

[1] However, the State does not argue waiver and we agree the complaint is preserved.

[2] There are no citations to the record in appellant's brief to any of the venire members about whom he complains.

The Texas Code of Criminal Procedure ("the Code") permits either the State or the defense to challenge a particular venire member for cause. TEX. CODE CRIM. PRO. ANN. art. 35.16(a) (West 2006). The Code provides that a venire member may be challenged for cause when he or she "has a bias or prejudice in favor of or against the defendant . . . [or] the law upon which either the State or the defense is entitled to rely." *Id.* art. 35.16(a)(9), (c)(2). The test is whether the venire member's bias or prejudice would substantially impair his ability to follow his oath and the instructions of the court. *Gonzales*, 353 S.W.3d at 831-32.

A trial court does not abuse its discretion by refusing to strike a venire member who expresses bias or prejudice when the juror is subsequently "rehabilitated." *See Westbrook v. State*, 846 S.W.2d 155, 160-61 (Tex. App.—Fort Worth 1993, no pet.) (holding trial court did not err by denying challenge for cause because prospective juror was rehabilitated upon further questioning by prosecutor and trial court). The ability to set aside one's beliefs and follow the law is the true test of whether a juror has been rehabilitated. *Post v. State*, 936 S.W.2d 343, 347 (Tex. App.—Fort Worth 1996, pet. ref'd); *see also Barefoot v. State*, 596 S.W.2d 875, 883 (Tex. Crim. App. 1980) (determining subsequent questioning by both State and defense counsel made it clear venire member did not expect appellant to testify or present other evidence but only that his attorneys would do their best on his behalf and concluding trial court did not err by overruling challenge for cause because "It is obvious that [the venire member] was initially confused as to the relationship between appellant's right to remain silent and his right to effective assistance of counsel."); *Tuley v. State*, 151 Tex. Crim. 442, 445, 208 S.W.2d 366, 368 (1948) (overruling complaint on appeal; trial court instructed venire member concerning the law of reasonable doubt and became satisfied he would give defendant the benefit of any reasonable doubt that might exist); *Penrice v. State*, 716 S.W.2d 107, 111 (Tex. App.—Houston [14th Dist.] 1986, no pet.) (two venire members stated they would consider defendant's failure testify in reaching their verdict; trial court did not err in

denying challenge for cause because both were rehabilitated after instructions and questions from trial court).

## B. Were the Venire Members Rehabilitated?

In this case, during voir dire, the trial court explained a criminal defendant's right to remain silent and that a jury cannot consider a defendant's silence "for any purpose whatsoever." The court then explained

> . . . I'm trying to just get you to start thinking about this in terms of what it really means because I'm asking you if there's anybody in here who needs to honestly tell me, Look, if he does not testify, I don't care what you order me to do or not do, I'm going to consider it. And if you feel that way, please raise your hand and let me know.

Eight venire members raised their hands. Five of the eight were eventually struck, leaving only venire members 5, 18, and 39. We consider whether these venire members were rehabilitated, and if so, the trial court did not err in denying a challenge for cause as to each.

### 1. Venire Member #5

> The State: So the bottom line, the issue is that if you were selected as a juror in this case, when you went back to deliberate, if the defendant chose to exercise his right to remain silent, that means he did not take the witness stand to testify in the case, would you be able to not consider that and only base your decision on the evidence that you did hear from the witness stand?

> Venire member: There's a shadow back here. Logically, yes, I know he has the right to remain silent. The logical part of me says yes, support that. But there's a shadow back there when you have a mouthpiece in front of you, choosing the specific words for the specific part of each legislation and knowing which specific words to pick that could direct one way or the other. Do you understand what I'm trying to say?

> The State: Not really, no, ma'am. The question is –

> Venire member: When I was raised, I was raised that when you are asked a direct question, you give a direct answer. And so that's—but lawyers don't ask direct questions. They ask around questions. And I understand that, too. There's just that little shadow back there, and I was taught that when there's a shadow, you tell people you have that shadow. Now, the logical part of me probably could look around it, but that shadow would be there.

The court: I've got a direct question for you.

Venire member: Yes.

The court: If I order you not to consider it and the defendant doesn't testify, are you going to consider it? That's kind of direct, right, are you going to consider it?

Venire member: That he doesn't speak for himself?

The court: He does not testify and I order you not to consider it, are you still going to consider it?

Venire member: No. Because you're the law of the land.

The court: But see, that's the issue. Because that really is the issue. And that's why—

Venire member: So I'm looking at it from an emotional standpoint instead of a law standpoint.

The court: And you can. And so if you're saying look—because that's really what the order of the Court is, when I give you a charge . . . . That's the order of the Court, okay, and it's the law. And so you—either you can follow it or you can't. And if you can't, that's fine. We just need to know.

Venire member: No, I—good military family. You follow the rules of the—you know, that's what it is. But I had a shadow so I put my hand up.

Defense counsel then moved to strike venire member #5 on the grounds that she raised her hand when the court initially asked if anyone would state "I don't care what you order me to do or not do, I'm going to consider it," and defense counsel did not believe such a juror could be rehabilitated. The trial court again asked venire member #5, "Can you follow the Court's orders and can you follow the law?" To which she responded, "Yes." The trial court then denied the challenge for cause.

### 2. Venire Member #18

The State: Let's see, then we had Number 18 also on that same issue. Yes, sir. And, you know what, let me say, just to follow up on what the Judge just explained. I probably didn't clarify that well. This rule of law that says that you may not consider the defendant's exercise of his rights to remain silent, that is actually going to be in the jury charge that the Judge will give you if you're a juror before you go

out to deliberate. The Judge will give you a whole set of instructions, and she'll read that aloud to you. It's in writing. And part of that will say—will contain that order of law from the Judge that says you are not to consider the defendant's exercise of his right to remain silent as evidence against him. You can't use that against him. So that is what the law says and that is what the Judge is going to tell you if you're a juror. I know that you had some issues with the defendant's exercise of his right to remain silent. But hearing that, that that is going to be part of the Judge's orders, the law of the Court that you get in the jury charge, would you follow that.

Venire member: Yes, of course. And I just totally misunderstood that question.

The State: Okay. So was it more of what you were getting at is, sure, it's a natural human tendency to want to hear both sides?

Venire member: Exactly.

The State: Yeah. And there is nothing wrong with that. I think it is, like I said, a very human tendency for us to want to do that. It's a very different thing than saying I cannot follow the law and afford the defendant his right to remain silent.

Venire member: Right.

The State: That's the question. Can you follow the law. And if the defendant chooses to exercise his right to remain silent, you will not hold that against him in your deliberations?

Venire member: Yes.

The State: Okay. Thank you.

**3. Venire Member #39**

The State: Okay. Juror Number 39, yes, ma'am. Let me ask you the same issue, the same question. If the Judge's instructions, the law of the Court that you're given before you go out to deliberate, if she tells you that you are not to hold it against the defendant or consider in any way the fact that he chose to exercise his right to remain silent, would you be able to follow that law?

Venire member: Yes, because that's his choice.

The State: Yes, because that's his choice?

Venire member: Uh-huh.

The State: All right. That's all I have. Thank you, ma'am. . . . .

**C. Analysis**

In reviewing the trial court's action, we ask whether the totality of the voir dire testimony supports the court's finding that the prospective juror is able to follow the law as instructed and reverse only if a clear abuse of discretion is evident. *King v. State*, 29 S.W.3d 556, 568 (Tex. Crim. App. 2000). When the venire member's answers are vacillating, unclear or contradictory, particular deference is accorded to the trial court's decision. *Moore*, 999 S.W.2d at 400 (holding trial court did not err in sustained State's challenge for cause because "[t]he record . . . [was] equivocal as to [venire member's] ability to follow the law. While in portions of the record she states she would not require that premeditation be shown before imposing the death penalty, in other portions she suggests that she would require premeditation."). Here, venire member #5's answers to the questions posed by both the State and the court began as somewhat unclear: "Now, the logical part of me probably could look around it, but that shadow would be there. . . . You follow the rules of the—you know, that's what it is. But I had a shadow so I put my hand up." However, after further questioning about her willingness to follow the law as set forth by the court, venire member #5 unequivocally answered, "Yes." According appropriate deference to the trial court's decision, we hold the court did not abuse its discretion in denying appellant's challenge for cause to venire member #5.

In *Tuley*, 208 S.W.2d at 368, the trial court determined the venire member had not understood defense counsel's questions, and, after instructing the venire member concerning the law of reasonable doubt, the trial court was satisfied he would give the defendant the benefit of any reasonable doubt that might exist. In this case, venire member #18 stated he misunderstood the question and unequivocally answered "Yes" when asked whether he would not hold the defendant's exercise of his right to remain silent against the defendant. According appropriate

deference to the trial court's decision, we hold the court did not abuse its discretion in denying appellant's challenge for cause to venire member #18.

Finally, venire member #39 also answered unequivocally in the affirmative when asked whether he would not hold the defendant's exercise of his right to remain silent against the defendant. According appropriate deference to the trial court's decision, we hold the court did not abuse its discretion in denying appellant's challenge for cause to venire member #39.

**SUFFICIENCY OF THE EVIDENCE**

On appeal, appellant does not challenge the sufficiency of the evidence in support of the jury's verdict on the charge of felon in possession of a weapon. Instead, he asserts the evidence is insufficient to support an implied finding under the deadly conduct charge that he acted recklessly because there was no evidence that he "failed to make an adequate inspection and inquiry regarding the presence of others" inside the house when he discharged his weapon at the house.

When reviewing the legal sufficiency of the evidence to support a criminal conviction, we review the evidence in the light most favorable to the verdict to determine whether a rational juror could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). The jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012); *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). Under the *Jackson* standard, we are required to defer to the jury's determination of the credibility of witnesses "and the weight to be given their testimony." *Brooks*, 323 S.W.3d at 899. Circumstantial evidence is as probative as direct evidence, and alone, may be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). A jury is permitted to draw multiple reasonable inferences from the facts so long as the inferences are supported by the evidence presented at trial. *Merritt*, 368 S.W.3d at 525.

We do not ask whether we believe the evidence at trial established guilt beyond a reasonable doubt, instead, we consider only whether the jury reached a rational decision. *Brooks*, 323 S.W.3d at 899.

In this case, the jury charge instructed the jury that it could find appellant guilty of deadly conduct if it found from the evidence beyond a reasonable doubt that appellant "did knowingly discharge a firearm, at or in the direction of a habitation, and [appellant] was reckless as to whether the habitation was occupied in that [appellant] failed to make adequate inspection and inquiry regarding the presence of others therein." We measure the sufficiency of the evidence by looking at the substantive elements of the crime as defined by the hypothetically correct jury charge. *Infante v. State*, 397 S.W.3d 731, 734 (Tex. App.—San Antonio 2013, no pet.). A person commits the offense of deadly conduct "if he knowingly discharges a firearm at or in the direction of: (1) one or more individuals; or (2) a habitation, building, or vehicle and is reckless as to whether the habitation, building, or vehicle is occupied." TEX. PEN. CODE ANN. § 22.05(b) (West 2011).

Here, the jury heard the following evidence. San Antonio Police Officer Lawrence Smith testified that at around 1:00 a.m. the morning of August 29, 2013, he was parked in a parking lot talking to another patrol officer when he heard the sound of ten to fifteen gunshots. The parking lot was about two blocks from West Poplar Street. Because Officer Smith thought the sound of the gunshots was coming from West Poplar, he and the other officer (who was in his own patrol car) left the parking lot and drove to West Poplar. Officer Smith said they were looking for anyone walking or running in the area of the shots, or for a car that may have been left in the area. About thirty seconds after leaving the parking lot, Officer Smith saw a man—later identified as appellant—walking along a fence line in a vacant lot next to a house at 2319 West Poplar. Officer Smith testified he told appellant to stop and put his hands up, at which time Smith heard something drop on a concrete slab. Officer Smith then told appellant, who was walking toward the officer,

to get down on the ground. As appellant continued to walk toward Officer Smith, appellant started dropping items from his pocket. One of the items dropped was a black gun holster. Officer Smith stated that when appellant got within an arm's length from him, he grabbed appellant's jacket and pulled appellant to the ground. At about this time, the other officer arrived and together they handcuffed appellant. Officer Smith said they raised appellant up from the ground, searched him, and found appellant's identification and a box of bullets.

San Antonio Police Patrol Officer Jesus Rubio testified he was dispatched to 2319 West Poplar the morning of the shooting. He found a gun at the spot where Officer Smith said he heard appellant drop something to the concrete slab at the back of the West Poplar house. Officer Rubio did not find any bullets or shell casings. San Antonio Detective Francisco Rivera testified he collected fifteen shell casings from the street in front of the house. Detective Rivera also located four bullet holes on the exterior of the house. Detective Rivera identified the gun that was found as a Ruger P89 semi-automatic handgun.

Michael Rohmer, a San Antonio Police Department crime scene investigator, testified he performed a gunshot residue test on appellant. Christina Vachon, a Bexar County crime lab forensic scientist, testified her analysis of the test performed by Rohmer revealed gunshot residue on appellant's right and left hands. David Pendleton, a Bexar County firearms examiner, described the gun as a Ruger model P89 with a .9mm caliber. He said the live ammunition recovered from the scene was compatible with the gun and that the fifteen shell casings recovered from the scene were all fired from the gun.

Peggy Jean Slack testified she lived at 2319 West Poplar in August 2013 with her husband, daughter, son, daughter-in-law, and grandchildren. Slack said everyone was either in bed or preparing to go to bed when they heard someone shooting at the front of their house. Slack said that the day after the shooting, she found bullet holes on the outside of her house and inside her

house in a bathroom and in a bedroom where four people were sleeping. Slack stated that all the bullet holes were caused by the shooting that occurred the morning of August 29.

Slack said she had known appellant for about twenty years. She stated that on August 26, at a location near her house, appellant and her son were talking when her son handed a telephone to appellant. She then saw appellant and another man, "Juan Carlos," begin fighting in the street. She said Juan Carlos ran to a pole close to her house where he collapsed. Slack said her son tried to "save" Juan Carlos, who was his friend, but Juan Carlos died before the ambulance arrived. Slack said she, her son, and her daughter-in-law gave statements to the police about the incident. The detective who took their statements said she requested an arrest warrant for appellant on August 27; however, the warrant was not executed until August 29 when appellant was apprehended for shooting at the house on West Poplar.

As stated above, a jury is permitted to draw multiple reasonable inferences from the facts so long as the inferences are supported by the evidence presented at trial. *Merritt*, 368 S.W.3d at 525. Here, the evidence revealed appellant knew the Slack family for many years and he knew they lived at 2319 West Poplar. Appellant fired at least fifteen shots at the house at around 1:00 a.m.—a time people are generally at home. One photo taken at the scene showed a car parked in the driveway of the house. We believe the inference that appellant "failed to make adequate inspection and inquiry regarding the presence of others" inside the 2319 West Poplar house was supported by the evidence presented at trial. We conclude the jury reached a rational decision in finding the essential elements of the offense beyond a reasonable doubt. Therefore, the evidence was sufficient to support the jury's verdict on the deadly conduct charge.

## CONCLUSION

We overrule appellant's issues on appeal and affirm the trial court's judgment.

Sandee Bryan Marion, Chief Justice

Do not publish